# United States Court of Appeals for the Federal Circuit

2006-1432

IMMUNOCEPT, LLC, PATRICE ANNE LEE,
and JAMES REESE MATSON,

Plaintiffs-Appellants,

v.

FULBRIGHT & JAWORSKI, LLP,

Defendant-Appellee.

Jon R. Stark, Chao Hadidi Stark & Barker LLP, of Menlo Park, California, argued for plaintiffs-appellants. With him on the brief was Bernard H. Chao. Of counsel on the brief were Michael P. Lynn, Jeremy A. Fielding, and Aaron Miller, Lynn Tillotson & Pinker, LLP, of Dallas, Texas.

David M. Gunn, Beck Redden & Secrest, L.L.P., of Houston, Texas, argued for defendant-appellee. With him on the brief were David J. Beck, Russell S. Post, and Constance H. Pfeiffer.

Appealed from: United States District Court for the Western District of Texas

Judge Sam Sparks

# United States Court of Appeals for the Federal Circuit

2006-1432

IMMUNOCEPT, LLC, PATRICE ANNE LEE,
and JAMES REESE MATSON,

Plaintiffs-Appellants,

v.

FULBRIGHT & JAWORSKI, LLP,

Defendant-Appellee.

_____

DECIDED:  October 15, 2007
_____

Before MICHEL, <u>Chief Judge</u>, LOURIE and RADER, <u>Circuit Judges</u>.

MICHEL, <u>Chief Judge</u>.

This is a legal malpractice case based on alleged errors in patent prosecution. Immunocept, L.L.C., Patrice Anne Lee, and James Reese Matson (collectively "Immunocept") appeal the decision of the United States District Court for the Western District of Texas granting summary judgment in favor of Fulbright & Jaworski, L.L.P. ("Fulbright") based on the following independent grounds: (1) the malpractice claim is barred by the statute of limitations and (2) the claim for damages is too speculative to be recovered under state law. <u>Immunocept v. Fulbright & Jaworksi, LLP</u>, No. A-05-CA-334, slip op. (W.D. Tex. Mar. 24, 2006) ("MSJ Order").  After Immunocept filed its opening brief, we ordered the parties to address whether there is "arising under"

jurisdiction over the malpractice claim under 28 U.S.C. § 1338. Because the claim scope determination involved in the malpractice claim presents a substantial question of patent law, we conclude that jurisdiction is proper under § 1338. We further conclude that Immunocept's malpractice claim is barred by the statute of limitations and, accordingly, affirm the district court's decision.

I

Lee, Matson, and Robert Wilton Pryor (not a party in this suit) developed large pore hemofiltration ("LPHF") technology for the treatment of sepsis, shock, acute renal failure, multiple organ system failure, and systemic inflammatory response syndrome-related diseases. The filtration technology treats these conditions and diseases by continuously removing blood from the body, filtering excessive toxins, and continuously returning the filtered blood to the body. Compl. ¶ 10. The inventors hired Fulbright to secure patent protection for the LPHF technology. On November 5, 1996, U.S. Patent No. 5,571,418 ("'418 patent"), entitled, "Hemofiltration of toxic mediator-related disease," issued with Lee, Matson, and Pryor as the named inventors. The inventors assigned their intellectual property rights to Immunocept L.L.C.

Immunocept subsequently hired patent attorney Thomas Felger, partner at Baker Botts L.L.P., to prosecute additional applications based on the LPHF technology. Felger reviewed the '418 patent and met with Immunocept in 1999 to discuss, inter alia, independent claim 1,[1] i.e., the claim at issue in the malpractice suit. Felger also reviewed the file history of the '418 patent as late as February 2002.

---

[1]      Claim 1 recites:
A method of treating a pathophysiological state caused by a toxic mediator-related disease consisting of hemofiltering blood with a filter,

Immunocept sought financial partners to proceed with "the necessary clinical trials and commercialization of their invention." Compl. ¶ 14. In January 2002, Immunocept entered into preliminary investment negotiations with Therakos, Inc., a subsidiary of Johnson & Johnson ("J&J"), to commercialize the invention. J&J discussed claim scope issues with Felger.

During the course of due diligence, J&J's patent attorneys discovered that the '418 patent suffered from a fatal flaw, namely the transition phrase "consisting of" in claim 1.[2] J&J's patent attorneys did not think that the claimed invention would provide adequate protection from competing methods. Compl. ¶ 17. Therefore, on April 5, 2002, Therakos terminated discussions with Immunocept.

After Immunocept discussed the claim scope issue with Fulbright, the parties entered into a tolling agreement that ran from March 4, 2004 to April 20, 2005. The parties agree that the critical date for the statute of limitations analysis is March 9, 2002.

On May 6, 2005, Immunocept sued Fulbright in the Western District of Texas for legal malpractice under Texas state law, alleging § 1338 as the sole jurisdictional basis. Fulbright moved for summary judgment, arguing that the malpractice claim is barred by the statute of limitations and that damages are too speculative as a matter of law. On March 24, 2006, the district court granted summary judgment in favor of Fulbright on both independent grounds.

---

wherein said filter has a molecular weight exclusion limit of 100,000 to 150,000 Daltons and allows for passage of molecules with a molecular weight of about 70,000 Daltons in the presence of whole blood.

[2] The application giving rise to the '418 patent was amended on January 12, 1996, by inserting the phrase "consisting of" in claim 1. See Kirk Expert Report ¶ 4.

Immunocept filed a motion to alter or amend the judgment pursuant to Rule 59 of the Federal Rules of Civil Procedure on April 7, 2006. The district court denied this motion on May 4, 2006. This timely appeal followed. On August 8, 2006, we ordered the parties to brief the § 1338 jurisdictional basis for the case. Both parties filed responsive briefs, agreeing that § 1338 jurisdiction is proper. To the extent that there is § 1338 jurisdiction over the malpractice claim, we have exclusive appellate jurisdiction under 28 U.S.C. § 1295(a)(1).

## II

We have inherent jurisdiction to determine our jurisdiction over an appeal and thus address this issue sua sponte. Haines v. Merit Sys. Prot. Bd., 44 F.3d 998, 999 (Fed. Cir. 1995); see also In re Alappat, 33 F.3d 1526, 1530 (Fed. Cir. 1994) (en banc). Under 28 U.S.C. § 1295(a)(1), we have exclusive jurisdiction over "an appeal from a final decision of a district court of the United States . . . if the jurisdiction of that court was based, in whole or in part, on section 1338." Section 1338, in turn, provides district courts with exclusive jurisdiction over patent cases. See 28 U.S.C. § 1338(a) ("The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks. Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases.").

Under Christianson v. Colt Industries Operating Corp., § 1338 jurisdiction extends to any case "in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law

is a necessary element of one of the well-pleaded claims." 486 U.S. 800, 809 (1988). The Supreme Court later rephrased the Christianson two-part test as a determination of whether "a state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2005). Because legal malpractice is a state law claim, we must determine whether it satisfies the second part of Christianson in view of the federalism concerns of Grable. We conclude that it does.

Immunocept's well-pleaded complaint alleges, as the only cause of action, attorney malpractice, which under Texas state law requires proof of duty, breach, causation, and damages. See Peeler v. Hughes & Luce, 909 S.W.2d 494, 496 (Tex. 1995) (stating the elements of a malpractice cause of action). Immunocept alleges as the sole source of attorney error a claim drafting mistake[3] that provided inadequate patent protection and could allow competitors to copy the claimed methods without infringing the '418 patent by simply adding another element. Compl. ¶¶ 17-18. Thus, the alleged attorney error narrowed the scope of the patent.

Because it is the sole basis of negligence, the claim drafting error is a necessary element of the malpractice cause of action. As such, there is no way Immunocept can

---

[3]    Unlike Appellant's brief, the Complaint does not identify "consisting of" as the nature of the drafting mistake. See Vehicle Techs. Corp. v. Titan Wheel Int'l, 212 F.3d 1377, 1382 (Fed. Cir. 2000) ("The phrase 'consisting of' is a term of art in patent law signifying restriction and exclusion, while, in contrast, the term 'comprising' indicates an open-ended construction.") (citation omitted). Therefore, we consider the alleged error in claim drafting in its broadest context, since our appellate jurisdiction is determined by "reference to the well-pleaded complaint, not the well-tried case." Christianson, 486 U.S. at 814.

prevail without addressing claim scope. The parties, however, dispute whether there was a drafting mistake. Therefore, if determining claim scope involves a substantial question of federal law that passes the federalism muster of Grable, there is § 1338 jurisdiction over the malpractice claim under both Christianson and Grable.

We have held that where patent infringement is a necessary element of a legal malpractice claim stemming from prior litigation, there is § 1338 jurisdiction. Air Measurement Techs., Inc. v. Akin Gump, No. 2007-1035, __ F.3d __ (Fed. Cir. 2007); see also U.S. Valves, Inc. v. Dray, 212 F.3d 1368, 1372 (Fed. Cir. 2000) (holding that a breach of contract claim requiring proof of patent infringement confers § 1338 jurisdiction); Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc., 986 F.2d 476, 477-78 (Fed. Cir. 1993) (holding that there is § 1338 jurisdiction over a business disparagement claim that requires proof of patent non-infringement). We have also held that there is § 1338 jurisdiction over state claims that involve a comparison of patent applications and the proof of invalidity. See Univ. of W. Va. v. VanVoorhies, 278 F.3d 1288, 1295 (Fed. Cir. 2002) (holding § 1338 jurisdiction is proper where breach of duty to assign a patent requires resolution of whether the disputed patent application is a continuation-in-part of a prior application); Hunter Douglas, Inc. v. Harmonic Design, Inc., 153 F.3d 1318, 1329 (Fed. Cir. 1998) (holding that a state law claim of injurious falsehood presents a substantial question of patent law where plaintiff has to show invalidity of the patent), overruled in part on other grounds by Midwest Indus., Inc. v. Karavan Trailers, Inc., 175 F.3d 1356, 1358-59, 1361 (Fed. Cir. 1999) (en banc in relevant part).

Because patent claim scope defines the scope of patent protection, see Johnson & Johnston Assocs. v. R.E. Serv. Co., 285 F.3d 1046, 1052 (Fed. Cir. 2002) (en banc), we surely consider claim scope to be a substantial question of patent law. As a determination of patent infringement serves as the basis of § 1338 jurisdiction over related state law claims, so does a determination of claim scope. After all, claim scope determination is the first step of a patent infringement analysis. See Lacks Indus., Inc. v. McKechnie Vehicle Components USA, Inc., 322 F.3d 1335, 1341 (Fed. Cir. 2003) (describing the two steps of an infringement determination).

Claim scope determination is a question of law that can be complex in that it may involve many claim construction doctrines. Litigants will benefit from federal judges who are used to handling these complicated rules. See Grable, 545 U.S. at 315. Additionally, Congress' intent to remove non-uniformity in the patent law, as evidenced by its enactment of the Federal Courts Improvement Act of 1982, Pub. L. No. 97-164, 96 Stat. 25, is further indicium that § 1338 jurisdiction is proper here. See also Grable, 545 U.S. at 315; Christianson, 486 U.S. at 809. Having satisfied ourselves of jurisdiction, we now turn to the merits of the summary judgment decision.

III

We give plenary review to a district court's grant of summary judgment, applying the same standard as the district court. Vanmoor v. Wal-Mart Stores, Inc., 201 F.3d 1363, 1365 (Fed. Cir. 2000). "Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Id. (citation omitted).

The district court granted summary judgment in favor of Fulbright on the ground that the malpractice claim is barred by the two-year statute of limitations, as measured by the imputation of the knowledge of Attorney Thomas Felger to Immunocept. MSJ Order at 5. The two-year period starts to run when a "client discovers or should have discovered through the exercise of reasonable care and diligence the facts establishing the elements of a cause of action." Apex Towing Co. v. Tolin, 41 S.W.3d 118, 121 (Tex. 2001) (applying the discovery rule to legal malpractice cases).

The parties agree that the critical date for the statute of limitations analysis is March 9, 2002. The crux of the malpractice case is the narrowing effect of "consisting of" on the scope of the claims in the '418 patent. Immunocept argues it was not on notice of the basis of its malpractice case until J&J pointed out flaws in the claim scope in April 2002. However, the undisputed evidence speaks otherwise.

Immunocept's expert, patent attorney Alan MacPherson, testified that the transition "consisting of" drastically limits the scope of a patent, that nothing in the file history would change the limited meaning of the phrase, and that patent attorneys would know what the limitation meant. As further indicia of the restrictive nature of this claim language, Immunocept submitted as evidence a guide on writing patent applications which states that "consisting of" is the most restrictive transitional phrase because it excludes non-recited elements.[4] MacPherson testified that anyone would know of the restrictive language simply by reading the claims on the face of the patent. However, Felger did more than read the patent. He analyzed the claim scope, reviewed the file history, and reviewed prior art references cited by the Examiner to reject pending claims

---

[4] Thus, a competitor could design around a claim with this transitional phrase by adding any step or element not recited in the claim.

in the application that gave rise to the '418 patent, no later than February 2002 (i.e., prior to the critical date).

Instead of proffering evidence that Felger was <u>not aware</u> of the limited scope of the patent, Immunocept asserts that Felger did not reasonably know about the <u>malpractice</u> claim because it hired him to secure additional patents on the LPHF technology, not to investigate the malpractice claim. The relevant inquiry is not whether Felger was hired to investigate malpractice, but whether he knew or should have known facts later establishing a malpractice claim (i.e., the narrowed claim scope). <u>See</u> <u>PPG</u> <u>Indus. v. JMB/Houston Ctrs. Ltd. P'ship</u>, 146 S.W.3d 79, 93-94 (Tex. 2004) (observing that the focus of the discovery rule is on the wrongfully caused injury even if the claimant does not know "the specific cause of the injury; the party responsible for it; the full extent of it; or the chances of avoiding it").

Even Felger's testimony weakens Immunocept's argument. For example, Felger testified that one of his assignments was to draft "claims that were broader than the [100,000 to 150,000 Daltons] range on the filter" in claim 1 of the '418 patent, <u>see</u> <u>supra</u> note 1, and that his goal was "to develop a picket fence around the '418 patent." However, Felger would not know the range of molecular weights covered by claim 1 without at least considering "consisting of." In other words, using Felger's vernacular, he would have to ascertain the size (i.e., scope) of the '418 patent in order to determine the size of the picket fence to build around it.

There is practically no way Felger could have determined the scope of claim 1 disregarding the phrase "consisting of," which, according to Immunocept's evidence, is

so drastic and glaring that any patent attorney would be aware of its restrictive nature.[5]

Drawing all justifiable inferences in favor of Immunocept, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986), we conclude that, based on the blatantly restrictive transitional phrase and Felger's review of the patent, file history, prior art, and claim scope, Felger should have reasonably known that "consisting of" drastically narrowed the scope of the claims in the '418 patent no later than February 2002, thereby starting the statute of limitations clock.

IV

Our analysis does not end here, for Felger's reasonable knowledge supports a statute of limitations bar only if his knowledge can be imputed to Immunocept. "Knowledge or notice to an attorney acquired during the existence of the relationship of attorney and client, and while acting within the scope of his authority, is imputed to the client." <u>Gulf Atl. Life Ins. Co. v. Hurlbut</u>, 749 S.W.2d 96, 98 (Tex. App. 1985) (citations omitted). Immunocept argues that there can be no imputation of Felger's knowledge to it because given the scope of Felger's employment (i.e., to draft additional patent applications), he did not have a <u>duty to communicate</u> this knowledge to Immunocept. However, the imputation analysis involves determining whether an attorney was acting within the scope of his authority or employment when he discovered or reasonably should have discovered the critical information. Noticeably absent from the imputation rule is a requirement that the attorney have a duty to disclose information to the client.

---

[5] It appears as though Immunocept seeks to use "consisting of" as both a sword (arguing that reasonable attorneys would have known of the limiting nature of the phrase) and a shield (arguing Felger would not have reasonably known).

More importantly, Immunocept did not argue below in its opposition to the motion for summary judgment, or in its motion to alter or amend the judgment,[6] that imputation requires a finding of a duty to communicate information to a client. As such, under Fifth Circuit caselaw, which we apply to this appeal, Immunocept has waived this argument before us. Keelan v. Majesco Software, Inc., 407 F.3d 332, 339 (5th Cir. 2005) ("If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal.") (internal citation omitted). We do not address the merits of this argument, nor do we opine on whether Felger had a duty to disclose the information to Immunocept. Instead, we examine the scope of Felger's authority.

Here, Felger was authorized to examine the '418 patent, its file history, and related prior art to analyze the scope of the claims. These are the same patent, same file history, same claim, and same scope analysis[7] that are the basis for the legal malpractice suit. This is not a case where a client hired an attorney for work in an area of law far removed from patent law (e.g., civil rights law) and the attorney discovered patent prosecution information relevant to a legal malpractice case. In stark contrast, this is a case where a client hired a patent prosecution attorney to examine a patent that

---

[6] Although Immunocept argued that the district court's conclusion that Felger should have discovered the malpractice and had a duty to communicate that information to it is the equivalent of a grant of summary judgment of malpractice against Felger, Immunocept did not argue that imputation of knowledge requires an analysis of the duty to disclose any reasonably discovered information to a client. We also note for the record that in the MSJ Order, the district court, contrary to Immunocept's argument, did not discuss Felger's duty to disclose information. Instead, the district court limited the imputation analysis to the scope of Felger's authority.

[7] Although Felger provides evidence that he focused on the molecular weight range of the filters in claim 1, his analysis necessarily involved examining the transitional phrase, which is the same claim scope issue as in the malpractice suit.

2006-1432                                11

later became the subject of a legal malpractice suit. Felger's billing record for services rendered through February 28, 2002 (i.e., prior to the critical date) is further evidence that Felger acted within the scope of his authority when he reasonably should have discovered the facts about the narrowed claim scope.

> Patent review to determine size of molecules covered in patent; interpreting claims in issued patent; continuing to review of [sic] the file history for U.S. Patent 5,571,418; telephone discussion with Mr. David Radunsky concerning the file history and possible questions by Johnson & Johnson concerning the scope of the claims in U.S. Patent 5,571,418; reviewing prior art references cited by the examiner to reject the pending claims; continuing to study the file history in preparation for telephone conference with Johnson & Johnson concerning the scope of the claims in U.S. Patent 5,571,418 and other Immunocept patents/pending applications; telephone conference with Immunocept and Johnson & Johnson representatives concerning Immunocept intellectual property portfolio.

This record is evidence that Felger's employment included some participation in the negotiation of the investment deal with J&J, i.e., the same deal that allegedly went awry based on flaws in the claim drafting.

Therefore, we conclude that Felger acted within the scope of his authority when he reasonably should have discovered the facts that later served as the basis of Immunocept's malpractice claim. As such, imputation of Felger's knowledge to Immunocept is proper. Because this reasonably discoverable knowledge occurred prior to the critical date, Immunocept's malpractice claim is barred by the statute of limitations. Therefore, we need not and do not address whether Immunocept's damages are speculative under Texas state law.

V

We review the district court's denial of Immunocept's Rule 59 motion for abuse of discretion, Midland W. Corp. v. Fed. Deposit Ins. Corp., 911 F.2d 1141, 1145 (5th Cir.

2006-1432                                    12

1990), using the law of the regional circuit, <u>Univ. of W. Va.</u>, 342 F.3d at 1294 (stating that denial of a Rule 59 motion "is a purely procedural question not unique to patent law"). <u>See</u> Fed. R. Civ. P. 59. Because Immunocept's Rule 59 motion is based in part on a reiteration of its arguments regarding the statute of limitations, which we deem a bar to the present malpractice case, we conclude that the district court did not abuse its discretion in denying the motion.

VI

For all the foregoing reasons, we hold that where, as here, determination of claim scope is a necessary, substantial, and contested element of a malpractice claim stemming from patent prosecution, there is "arising under" jurisdiction under § 1338. We further hold that the legal malpractice claim is barred by the Texas statute of limitations. Accordingly, the decision of the district court is

<u>AFFIRMED</u>.