# United States Court of Appeals for the Federal Circuit

2009-1027, -1028

KARA TECHNOLOGY INCORPORATED,

Plaintiff-Appellant,

v.

STAMPS.COM INC.,

Defendant-Cross Appellant.

Eliot D. Williams, Baker Botts L.L.P., of New York, New York, argued for plaintiff-appellant. With him on the brief was Robert C. Scheinfeld.

Philip J. Graves, Graves Law Office, P.C., argued for defendant-cross appellant.

Appealed from: United States District Court for the Central District of California

Judge Consuelo B. Marshall

# United States Court of Appeals for the Federal Circuit

2009-1027, -1028

KARA TECHNOLOGY INCORPORATED.,

Plaintiff-Appellant,

v.

STAMPS.COM, INC.,

Defendant-Cross Appellant.

On appeal from the United States District Court for the Central District of California in Case No. 05-CV-1890, Judge Consuelo B. Marshall.

_____

DECIDED:  September 24, 2009

_____

Before SCHALL, PLAGER, and MOORE, <u>Circuit Judges</u>.

MOORE, <u>Circuit Judge</u>.

Kara Technology (Kara) appeals from the final judgment of the United States District Court for the Central District of California, following a jury trial, that Stamps.com did not infringe various claims of U.S. Patent Nos. 6,505,179 (the '179 patent) and 6,735,575 (the '575 patent) with its Pre-Version 5 (Pre-V5) or Versions 5 and later (V5) products.  Kara also appeals from the district court's grant of summary judgment in favor of Stamps.com on its breach of contract claim.  The court ruled, as a matter of law, that Stamps.com did not breach its nondisclosure agreement (NDA) with Kara.  For its part, Stamps.com cross appeals the determination of the district court that it was not

a prevailing party in the litigation, and that it thus was not entitled to costs under 28 U.S.C. § 1920 or attorney's fees under the NDA. For the following reasons, we vacate-in-part, reverse-in-part, and remand.

## BACKGROUND

Kara owns the '179 and '575 patents. Salim Kara is the sole inventor listed on both patents. The '179 patent is a continuation-in-part of the '575 patent. The '179 and '575 patents are directed toward apparatuses and methods of creating and verifying the authenticity of documents such as postage. The patents concern technology that allows a customer to print a secured document (such as a stamp or an airline ticket) at home using preprinted label sheets. Data contained in the preprinted label sheets are used to both create the final document and later validate its authenticity. Figures 1 and 2 (identical in both the '179 and '575 patents) illustrate one embodiment of the invention.



FIG. 1



FIG. 2

Figure 1 depicts a label sheet preprinted with a bar code (16a) and a serial number (16b). The patent refers to this preprinted information as "preestablished data." A consumer communicates information contained in the preprinted sheet to a processor, which then uses the information to create a security indicia (21). The consumer may then print out the final document at home. As shown in figure 2, the final document contains both the preprinted information and the security indicia. A seller (e.g., the post office or an airline) later verifies the authenticity of the document using both the preprinted information and the security indicia.

Stamps.com offers Internet-based shipping and postage services. In May of 2000, Stamps.com approached Kara to collaborate on Kara's Personal Computer-based (PC-based) stamp technology. On May 9, 2000, the two signed an NDA, requiring Stamps.com to "keep secret and not disclose . . . and not use for its own use in any capacity whatsoever any Confidential Information for any purpose other than for the purpose for which such information was disclosed" (i.e., to facilitate "business

discussions"). NDA, ¶¶ 1, 3. Further, the NDA specifically provided that Stamps.com was not permitted to "make written, electronic, or photostatic copies or excerpts of or summaries of Confidential Information" without prior written consent from Kara. Id. ¶ 5.

In July of 2000, Stamps.com indicated it was no longer interested in pursuing a business relationship with Kara. On October 24, 2001, Stamps.com announced that the U.S. Postal Service had approved beta testing of its PC-based postage product. The Pre-V5 product was launched commercially on July 17, 2002, while the V5 line was launched on June 28, 2005.

Kara brought suit against Stamps.com, alleging infringement and breach of contract (among other claims not on appeal) on October 22, 2004, in the United States District Court for the Southern District of New York. Eventually, the case was transferred to the Central District of California, at which point Stamps.com counterclaimed for patent invalidity and unenforceability, and, relevant to this appeal, moved for summary judgment on Kara's breach of contract claim. The district court granted the summary judgment motion on August 23, 2006, finding that the statute of limitations for the contract claim had run. Furthermore, assuming arguendo that the statute of limitations had not run, the court found all alleged "confidential" information was in the public domain, and thus Stamps.com could not have breached the NDA by copying and retaining the information learned through its business dealings with Kara.

Thereafter, following a Markman hearing, the district court construed the relevant patent terms and entered a Markman Order on September 10, 2007. Stamps.com then moved for summary judgment of noninfringement and invalidity, which was denied by the court. Infringement of claims 1, 4, 5, 7, and 42 of the '575 patent and of claims 24,

27–31, 36–39, 42, 44, and 54, as well as Stamps.com's invalidity counterclaims, were then tried before a jury. After the close of evidence, Kara moved for judgment as a matter of law (JMOL) that Stamps.com's Pre-V5 product infringed claim 42 of the '575 patent and claims 36, 38, and 42 of the '179 patent. Upon denial of this motion, the court submitted the infringement and invalidity issues to a jury. The jury found that neither the Pre-V5 nor the V5 line of products infringed the asserted claims. For that reason, it did not address any of the invalidity counterclaims.

The court entered judgment on July 16, 2008, holding that Stamps.com was the prevailing party. Kara subsequently filed a renewed JMOL motion that Stamps.com's Pre-V5 product infringed claim 42 of the '575 patent and claims 36, 38, and 42 of the '179 patent; a motion for a new trial; a motion to strike the part of the July 16 judgment stating that Stamps.com was the prevailing party; and a motion to dismiss Stamps.com's invalidity and unenforceability counterclaims. On September 10, 2008, the district court denied the motions for a new trial and renewed JMOL, but granted the motion to strike the reference to Stamps.com as a prevailing party, entered judgment for Kara on the counterclaim of unenforceability, and dismissed the invalidity counterclaims without prejudice. Both parties timely appealed; we have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

### I.     Claim Construction

We review claim construction de novo. Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1455-56 (Fed. Cir. 1998) (en banc). The words of a claim are generally given their ordinary and customary meaning as understood by a person of ordinary skill

in the art in question at the time of the invention. <u>Phillips v. AWH Corp.</u>, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc). "[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments." <u>Id.</u> at 1323. "In particular, we have expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment." <u>Id.</u>

Claim 36 of the '179 patent is representative of the claims at issue on appeal:[1]

36.    A method for establishing the validity of a display created by a non-secure printer, said method comprising the steps of:

placing in said printer paper upon which information may be created, said paper containing preestablished data which is unique to said paper;

communicating at least a portion of said preestablished data to a location independent from said printer, said independent location operable to send to said printer a security indicia, as part of a human readable display, <u>said security indicia created in part by information contained in said preestablished media data and whereby said security indicia is validatable at a subsequent time partially under control of data contained in said preestablished paper data</u>, said unique data being created on said paper defining one or more from the group consisting of:

postage stamps, money orders, bank drafts, letters of credit, legal documents, legal certificates, diplomas, passports, birth certificates, visas, drivers licenses, social security cards, medical insurance cards, vacation packages, travel vouchers, car rental vouchers, hotel vouchers, meal vouchers, drink vouchers, food stamps, tickets, baggage tags, prescriptions (Rx), vehicle licenses, vehicle titles;

wherein said paper is divided into sections each section adapted for printing thereon information pertaining to a different display,

---

[1]    The independent claims (claims 24 and 36 of the '179 patent and claims 1 and 42 of the '575 patent) all contain similar language describing the creation and validation of the security indicia. Claims 1 and 42 of the '575 contain different language concerning the operation of the "independent location," but these differences do not affect this appeal.

each such display having associated therewith a security indicia.

The central dispute concerns the meaning of the underlined language describing the creation and validation of the security indicia. The claim construction dispute pertains to three separate terms or phrases:

    (1) "security indicia"

    (2) "said independent location operable to send to said printer a security indicia, as part of a human readable display, said security indicia created in part by information contained in said preestablished media data" (the creation limitation)

    (3) "and whereby said security indicia is validatable at a subsequent time partially under control of data contained in said preestablished paper data" (the validation limitation)

The construction of all three terms, however, turns on the same issue: whether the security indicia must be created and validated under control of a key contained in the preestablished data. In its Markman Order, the district court construed "security indicia" by stating that the indicia must "be created under control of a key" and stated that the "information contained in" the preestablished data must be a "key." Kara Tech. Inc. v. Stamps.com, Inc., No. 05-1890, slip op. at 18 (C.D. Cal. Sept. 10, 2007) (Claim Construction Order). The district court further construed the creation limitation as "said independent location having a computer programmed to create a security indicia under control of a key contained in the preestablished data that is capable of sending to the printer a security indicia, and that the security indicia is part of a human readable display." Id. at 19. Finally, the court construed the validation limitation as "and by which it may be established at a subsequent time, under control of the key contained in the preetablished [media or] paper data, that the security indicia is authentic." Id. at 19-20. In doing so, the district court explained that "the history of secure systems design

2009-1027, -1028                                    7

supports that this invention requires a key." Id. at 17. It also referred to the detailed embodiment in the specification describing the use of a key in the preprinted data to support its construction. Id.

Kara argues that the term security indicia should be construed as "any distinctive mark that can be used to establish the validity of a document or display." It further argues that these claims do not require that the security indicia be created or validated by a key contained in the preestablished data. In response, Stamps.com argues that only a cryptographic key embedded in the preestablished data allows for the creation, control, and validation of the security indicia, as required by the patent claims. We agree with Kara that the preestablished data does not have to contain a key, and, as logically follows, that the security indicia does not have to be created or validated by a key in that data.

The claims at issue do not state that the preestablished data contain a key; they state that the data contain "information." Specifically, the plain language of the claims requires that the security indicia be "created in part by information contained in preestablished media data." See, e.g., '179 patent col.12 ll.14-15. This language does not require that the preprinted data contain a key, and certainly not a cryptographic key (as argued by Stamps.com), from which the security indicia would be generated. The preestablished data must, as the claim requires, simply contain information that will be used to create the security indicia—the information will be part of what creates the security indicia. Similarly, the claim requires that "security indicia is validatable at a subsequent time partially under control of data contained in said preestablished paper data." This merely requires that the data in the preestablished paper data (in this case

the serial number on the preprinted label) is part of what must be used to validate the security indicia. It in no way requires a key in the preestablished paper data.

Moreover, when all of the claims of the '179 and '575 patents are viewed together, it is clear that the claims at issue on appeal do not require a key in the preprinted data. "Differences among claims can . . . be a useful guide in understanding the meaning of particular claim terms." Phillips, 415 F.3d at 1314. Here, when the inventor wanted to restrict the claims to require the use of a key, he did so explicitly. None of the claims at issue on appeal recite the term "key." By contrast, all of the other independent claims require either an "encryption key" or "key data." '179 patent claims 1, 14, 47, 54, 59, 66; '575 patent claims 52, 60. In addition, dependent claim 2 of the '575 patent explicitly adds the limitation to claim 1 of the '575 patent that the security indicia "is validated by key information contained in at least a portion of said preestablished data." This further indicates that the claims at issue on appeal do not require the use of a key in the preprinted paper. See Phillips, 415 F.3d at 1314-15 ("[T]he presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim.").

To be sure, the specification repeatedly discusses a key embedded in the preestablished data. See, e.g., '179 patent col.2 ll.11-15, col.4 ll.52-59, col.5 ll.57-60, 65-67. In the only detailed embodiments in the patent, the key is embedded in the preestablished data. Id. This is not enough, however, to limit the patentee's clear, broader claims. The claim language read in the context of the specification does not require that a key be contained in the preestablished data, the patentee did not act as his own lexicographer or disavow claim scope. It is the claims that define the metes

and bounds of the patentee's invention.  See Corning Glass Works v. Sumitomo Elec. U.S.C., Inc., 868 F.2d 1251, 1257 (Fed. Cir. 1989).   The claims, not specification embodiments, define the scope of patent protection.  The patentee is entitled to the full scope of his claims, and we will not limit him to his preferred embodiment or import a limitation from the specification into the claims.  See Phillips, 415 F.3d at 1323.

Thus, in the context of these patents, a security indicia is "a mark printed on a document that can be used to verify the authenticity of the document."  The disputed terms and phrases require that the information or data contained in the preestablished data be used to create and validate the security indicia, but contrary to the district court's determination and Stamps.com's arguments, they do not require a key or cryptographic key in the preestablished data.

The expert testimony presented below does not compel a different result.  The claims recite "security indicia created in part by information . . . and . . . validatable at a subsequent time partially under control of data."  See, e.g., '179 patent col.12 ll.14-17. Stamps.com's expert, Professor McDaniels, testified that the terms "by" and "under control of" are terms of art that would indicate to one skilled in the art of secure systems design that the preprinted information must contain a cryptographic key, which he defined as "a very large number (e.g., 500 to 1,000 digits long)."  Kara presented competing testimony by Professor Keromytis, who opined that the terms would indicate to one skilled in the art that while the preprinted information must be used for both creation and validation, it "need not 'contain' a 'key.'"  It is not uncommon in patent cases to have such dueling experts.  When construing claims, however, the intrinsic evidence and particularly the claim language are the primary resources.  We have held

that extrinsic evidence such as expert testimony is "less significant than the intrinsic record in determining the legally operative meaning of claim language." Phillips, 415 F.3d at 1317 (internal quotation marks omitted). While helpful, extrinsic sources like expert testimony cannot overcome more persuasive intrinsic evidence. A "court should discount any expert testimony that is clearly at odds with the claim construction mandated by the claims themselves, the written description, and the prosecution history, in other words, with the written record of the patent." Id. at 1318 (internal quotation marks omitted).

Here, the testimony of Stamps.com's expert cannot overcome the plain language of the claims, which requires only that the security indicia be created "in part" by and validatable "partially" under control of the preprinted information and which does not require a key in the preestablished data. See, e.g., '179 patent col.12 ll.14-17. The asserted claims, in contrast to other claims in these patents, do not contain a limitation to a key embedded in the preestablished data, and we decline to read such a limitation into them.

Because the district court erred in construing the claims, we vacate the judgment of noninfringement. It is undisputed that versions of Stamps.com's accused Netstamps Pre-V5 products contain serial numbers that are used at least in part to create and partially validate the security indicia. See J.A. 4848-52, 4856-57 (testimony of Jeffrey Bussell, Stamps.com's Software and Development Manager); see also Memorandum in Support of Defendant Stamps.com's Motion for Summary Judgment on the Ground that the Patents Are Not Infringed at 6-8, Kara Technology Inc. v. Stamps.com, Inc., No. 05-1890 (C.D. Cal. Oct. 19, 2007). We do not, however, believe it would be appropriate to

rule as a matter of law on the issue of the Pre-V5 infringement in the first instance in light of alternative arguments of noninfringement that Stamps.com presented to the jury.[2] We therefore remand to the district court for further proceedings consistent with this opinion.

## II. Breach of the NDA

The district court granted summary judgment dismissing Kara's claim for breach of the NDA after concluding that the claim was barred by the four-year statute of limitations under the applicable state law and, as an alternative grounds for dismissal, that the NDA did not protect Kara's trade secrets because Kara had publicly disclosed them. Kara alleges two separate breaches of the NDA. The first is based on Stamps.com's admitted note-taking during a May 15, 2000 business meeting, in violation of Paragraph 5 of the NDA. The second is based on Stamps.com's alleged use of Kara's confidential information to develop Stamps.com's PC-based postage products, in violation of Paragraph 3 of the NDA. The district court focused solely on the note-taking and subsequent failure of Stamps.com to destroy the notes, stating that the October 2004 complaint clearly fell outside the four-year statute of limitations and thus there was no issue of material fact as to the breach of contract claim.

We give plenary review to a district court's grant of summary judgment, applying the same standard as the district court. Immunocept, LLC v. Fulbright & Jaworski, LLP, 504 F.3d 1281, 1286 (Fed. Cir. 2007). "Summary judgment is appropriate when there is

---

[2] For example, Stamps.com offered testimony that the Pre-V5 product did not contain the "independent location" limitation referred to in the claims. We see no error in the district court's construction of this limitation as an "independent location having a computer programmed to create a security indicia . . . capable of sending to the printer a security indicia." See Claim Construction Order at 19.

no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Id. (internal citation omitted); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Summary judgment must be granted against a party who has not introduced evidence sufficient to establish the existence of an essential element of that party's case, on which the party would bear the burden of proof at trial." Univ. of W. Va., Bd. of Trs. v. VanVoorhies, 278 F.3d 1288, 1295 (Fed. Cir. 2002).

Because this is a contract claim, we apply state law. Id., 278 F.3d at 1296. Per the terms of Paragraph 12 of the NDA, and as agreed on by the parties, Texas law governs. Appellant's Br. 22; Appellee's Br. 63. In Texas, the statute of limitations for breach of contract is four years. Enterprise-Laredo Assocs. v. Hachar's, Inc., 839 S.W.2d 822, 837 (Tex. App. 1992) (citing Tex. Civ. Prac. & Rem. Code Ann. § 16.004 (Vernon 1986)). This period tolls until the injured party discovers or through the use of reasonable care and diligence should have discovered the breach. Id. The party asserting the statute of limitations defense (Stamps.com) bears the burden of establishing when Kara discovered or should have discovered its breach. Geraghty & Miller, Inc. v. Conoco Inc., 234 F.3d 917, 932 (5th Cir. 2000).

As stated above, Kara alleges two separate breaches of the NDA. The first occurred when at least two Stamps.com employees took notes at a meeting between the parties on May 15, 2000. There is no real dispute that Kara knew or should have known of this breach at the time it occurred, as the meeting was attended by several of Kara's employees, including its President and Chief Operating Officer. Kara did not file its complaint until October 22, 2004, and therefore any claim based on this breach is barred by Texas's four-year statute of limitations. While we agree with the district court

that this note-taking breach is barred by the statute of limitations, Kara alleged a second breach that was not addressed in the district court's summary judgment order—that Stamps.com misused the information it learned at the May 15, 2000 meeting to develop its PC-based postage products, which allowed consumers to print stamps from home.

Kara asserts that it did not become aware of this separate breach until October 24, 2001 (less than four years before it filed its complaint), at the time Stamps.com publicly disclosed that the U.S. Postal Service had approved beta testing of its product. Stamps.com did not carry its burden of establishing no material fact as to the date Kara discovered this misuse. Although Stamps.com offered testimony that it intended to circulate the summaries from the May 15, 2000, Kara argues it had no such knowledge Stamps.com was using the confidential information to develop a PC-based postage product. Drawing all inferences and resolving all doubts in favor of the non-moving party, as we are required to do, we must conclude there is a genuine issue of material fact as to the date Kara discovered Stamps.com's use of Kara's "confidential" information.

If, however, Kara publicly disclosed all of its information prior to sharing it with Stamps.com, then Kara would not be entitled to relief under the NDA (because Kara would not have shared any confidential information). Paragraph 2 of the NDA specifically provides that "[c]onfidential information shall not include . . . [i]nformation which becomes part of the public knowledge through no breach of this Agreement or any similar obligations known by [Stamps.com]." Kara shared its information with Stamps.com on May 15, 2000. In ruling on summary judgment, the district court relied on two potential public disclosures: (1) a presentation by Kara in Finland from May 23-

25, 2000, and (2) an exhibit by Kara at the World Stamp Expo from July 7-16, 2000. Both of these disclosures post-date the May 15, 2000 meeting, during which Kara shared its information with Stamps.com. Thus, based on the dates of these disclosures alone, a genuine issue of material fact exists as to the amount of time Stamps.com potentially misused Kara's confidential information. For example, if it is found that Stamps.com did misuse the information (a fact on which we offer no opinion), and moreover immediately misused the confidential information after the May 15, 2000 meeting, Stamps.com still could be liable for a breach of contract claim based on the eight days before the May 23 presentation.

Furthermore, material factual disputes exist concerning what was disclosed at the Finland presentation and what one skilled in the art would have understood from Kara's exhibit at the World Stamp Expo. It is unclear from Kara's slides from its Finland presentation whether the public would understand how to create a secure document, or how those documents are later validated. Further, although there was testimony Kara's exhibit at the World Stamp Expo included a full demonstration, there was also testimony that Kara struggled to get its demonstration to work. Finally, it is unclear if Kara's system was fully explained during the demonstration, and whether a person of skill in the art would understand the technology based on the demonstration. Because there are material issues of fact in dispute regarding breach of the NDA due to misuse of the confidential information, we reverse the district court's grant of summary judgment on the breach of contract claim and remand for further proceedings consistent with this decision.

CONCLUSION

Because we conclude that the district court erred when construing the claims, we vacate the judgment of noninfringement and remand. Because the district court erred by granting summary judgment on the breach of contract claim when there exist disputes of material fact on Stamps.com's alleged misuse of information, we reverse and remand.[3]

VACATED-IN-PART, REVERSED-IN-PART, and REMANDED

---

[3] We have considered and have found to be without merit Kara's challenge to the district court's jury instructions regarding infringement and willfulness. In addition, given the disposition of this appeal, we need not address Stamps.com's cross-appeal of the district court's denial of attorneys' fees and costs. However, we note that the district court's declaration that Stamps.com was not the prevailing party because it lost on the counterclaim of unenforceability conflicts with our precedent. See Brooks Furniture Mfg. v. Dutailier Int'l, Inc., 393 F.3d 1378 (Fed. Cir. 2008); Manildra Milling Corp. v. Ogilvie Mills, Inc., 76 F.3d 1178 (Fed. Cir. 1996).