# United States Court of Appeals for the Federal Circuit

---

**ACCENT PACKAGING, INC.,**
*Plaintiff-Appellant,*

**v.**

**LEGGETT & PLATT, INC.,**
*Defendant-Appellee.*

---

2012-1011

---

Appeal from the United States District Court for the Southern District of Texas in case no. 10-CV-1362, Judge Lynn N. Hughes.

---

Decided: February 4, 2013

---

Keith Jaasma, Patterson & Sheridan, LLP, of Houston, Texas, argued for plaintiff-appellant.

Bart A. Starr, Shook, Hardy, & Bacon, L.L.P., Kansas City, Missouri, argued for defendant-appellee. With him on the brief were Christine A. Guastello, Robert C. Reckers and Jonathan N. Zerger.

---

Before RADER, *Chief Judge*, PROST and REYNA, *Circuit Judges*.

PROST, *Circuit Judge*.

Accent Packaging, Inc. ("Accent") appeals the district court's grant of summary judgment to Leggett & Platt, Inc. ("Leggett") of noninfringement of claims 1-5 of U.S. Patent No. 7,373,877 ("'877 patent") and of claims 1, 3, 4, 7, and 10-14 of U.S. Patent No. 7,412,992 ("'992 patent"). As part of its appeal, Accent challenges the district court's construction of the terms "each" and "a respective one" in the claims of the '877 patent. Because the district court erred in its construction, we reverse the district court's grant of summary judgment to Leggett with respect to claims 1-4 of the '877 patent and remand to the district court to enter summary judgment in favor of Accent on those claims. We affirm, however, the district court's grant of summary judgment to Leggett with respect to claim 5 of the '877 patent and all of the asserted claims of the '992 patent. We also affirm the district court's denial of Accent's motion for additional discovery pursuant to Fed. R. Civ. P. 56(d), as well as its dismissal of Accent's Missouri Uniform Trade Secrets Act ("MUTSA") cause of action.

## I.  BACKGROUND

### A.  THE ASSERTED PATENTS

The '877 and the '992 patents, assigned to Accent, arose from the same patent application and share a nearly identical specification. The patents disclose a wire tier device that is used to bale recyclables or solid waste for easier handling. Figures 5 and 7 of the patents, reproduced below, are representative of the disclosed device:



Fig. 5.

Fig. 7.

Of particular relevance in this appeal, the described wire tier includes "elongated operator bodies" 218, 220, 222, and 224. These four elongated operator bodies are fixed to and project radially from a cross shaft 212. *See* '877 patent col.6 ll.16–20; '992 patent col.6 ll.14–18. As the cross shaft rotates in a single direction, the elongated operator bodies perform several operations, including gripping the wire, twisting two ends of the wire together with a part known as the "knotter," cutting the wire, and finally ejecting the wire from the knotter so that the trash or recyclables being bound can be moved away from the baler and a new bundle can be tied. *Id.*

The patents also describe a knotter cover 266 (referred to in the asserted claims as simply the "cover") which normally is positioned beneath the knotter assembly and serves to retain the wires within the knotter assembly during the twisting and cutting operations. After the twisting and cutting is completed, the cover "is moved upwardly so as to permit ejection of the knotted and tensioned wire." *Id.* col.9 ll.27–29; '992 patent col.9 ll.24–26. The cover is shown in its elevated position in Figure 8 of the patents.

The patents further describe how two of the elongated operator bodies work together to perform two separate functions. Specifically, the patents describe how "the sector gear 256 is pivoted by virtue of the roller 246 attached to the operators 220, 222 and riding within drive slot 260." '877 patent col.8 ll.59–61; '992 patent col.8 ll.56–58. This rotation causes the twisting or knotting of the wire sections. '877 patent col.8 l.61–col.9 l.5; '992 patent col.8 l.58–col.9 l.2. But that is not all. Elongated operator bodies 220 and 222 also cause the cover to shift outward after the knotting process is complete. '877 patent col.9 ll.27–34; '992 patent col.9 ll.24–31. That is, elongated operator bodies 220 and 222 together operate both the knotter and the cover. Additionally, elongated operator body 218 operates the gripper and elongated

operator body 222 operates the cutter. *See* '877 patent col.6 ll.16–20; '992 patent col.6 ll.14–18.

Asserted claims 1-5 of the '877 patent recite a knotting device that includes a "pivotal shaft assembly and elongated operator bodies." Claim 1 of the '877 patent is representative for purposes of this appeal and reads as follows:

> 1. In a knotting device including a knotting assembly having a gripper for selectively gripping one of two adjacent wire sections, a rotatable knotter operable to twist-knot the two adjacent wire sections, a cutting element for cutting of the other of said adjacent wire sections after twist-knotting of the sections and a shiftable cover located adjacent said knotter for maintaining the wire sections within the knotter during feeding said twist-knotting and thereafter movable to a wire-clearing position permitting passage of the twist-knotted wire sections from the knotter, the improvement which comprises an operator assembly for timed operation of said gripper, knotter, cutting element and cover, and a single drive assembly coupled with said operator assembly for effecting said timed operation,
>
> *said operator assembly including a pivotal shaft assembly and elongated operator bodies, with each of the operator bodies being operably coupled with a respective one of said gripper, knotter, cutting element and cover so as to supply driving power from the single drive assembly thereto,*
>
> each of said operator bodies projecting radially from and being fixed to the shaft assembly such that rotational movement of the shaft assembly causes the operator bodies to swing about a shaft axis,

said shaft assembly effecting said timed operation by rotating in a single direction about the shaft axis,

each of said operator bodies including an interacting element associated therewith,

each of said interacting elements being drivingly connected to a respective one of the gripper, knotter, cutting element, and cover wherein swinging of the operator bodies in the single direction effects said timed operation.

'992 patent col.10 ll.24–56 (emphasis added).

Asserted claim 5 of the '877 patent and asserted claims 1, 3, 4, 7, and 10-14 of the '992 patent recite a mount for a cover that permits the cover to be pivoted away from the knotter through a pivot arc "of at least about 90°." Claim 1 of the '992 patent is representative for purposes of this appeal and reads as follows:

1. In a knotting device including a rotatable knotter operable to twist-knot a pair of adjacent wire sections, and a cover located adjacent said knotter in a wire-maintaining position for maintaining the wire sections within the knotter during feeding and knotting operations, the improvement which comprises *a mount for said cover permitting the cover to be pivoted away from said knotter to a knotter access position remote from said wire-maintaining position and though a pivot arc of at least about 90°,*

said cover being pivotal relative to the knotter to open from the wire-maintaining position to a wire-clearing position, with the cover permitting passage of the twist-knotted wire sections from the knotter when in the wire-clearing position,

said cover being further pivotal relative to the knotter to open beyond the wire-clearing position to the knotter access position.

'877 patent col.10 ll.20–39 (emphasis added).

## B. THE ACCUSED PRODUCT

Accent claims that its 470 wire tire device ("470 device") is the commercial embodiment of the '877 and '992 patents. According to Accent, Leggett obtained a 470 device in early 2006. Accent alleges that Leggett studied and eventually began selling its own copy of the 470 device—the Leggett Pinnacle wire tire device ("Pinnacle").

Accent acknowledges, however, at least two differences between the Leggett Pinnacle device and the Accent 470 device. First, the Pinnacle device includes only two elongated operating bodies rather than the four elongated operator bodies found in Accent's 470 device. In particular, the Pinnacle operates the knotter, the cover, and the cutter with a single elongated operator body. Second, the Pinnacle features a removable CORE™ module that incorporates many of the internal, wear-prone components of the Pinnacle's knotter assembly. The CORE™ is removed by pivoting the cover approximately sixty-eight degrees, securing the raised cover in place with the SafeLatch™ stop, and sliding the CORE™ out of the Pinnacle's knotter.

## C. THE DISTRICT COURT PROCEEDINGS

Accent filed suit against Leggett on April 26, 2010, asserting claims for infringement of the '877 and '992 patents and a claim for violation of the MUTSA, Mo. Rev. Stat. §§ 417.450–.467 (2010), based on Leggett's alleged improper acquisition and copying of a 470 device. On June 2, 2010, Leggett answered and filed a motion to dismiss Accent's trade secret claim for failure to state a claim. After an initial status conference on June 15, 2010, the district court dismissed Accent's trade secret claim.

Accent's expert was allowed to inspect Leggett's Pinnacle device on July 2, 2010. Pursuant to an order of the district court, Leggett subsequently produced a redacted copy of its own patent application, which purportedly covers its Pinnacle device. Leggett also produced engineering drawings of the Pinnacle, marketing and promotional materials related to the Pinnacle, and a Pinnacle operating manual. The district court held another status conference on August 16, 2010, and Accent asked for additional discovery. On August 19, 2010, the district court set a deadline of September 24, 2010 for the filing of motions for summary judgment, but denied Accent's request for additional discovery.

On September 3, 2010, Accent filed a motion seeking additional discovery from Leggett, including information regarding a Pinnacle unit that Leggett had allegedly sold to a customer, a Fed. R. Civ. P. 30(b)(6) deposition on issues related to infringement and claim construction, and production of the redacted portions of Leggett's patent application. The district denied each of these requests.

Accent moved for summary judgment of infringement of claims 1-4 of the '877 patent and Leggett moved for summary judgment of noninfringement of all the asserted claims of the '877 and '992 patents. In conjunction with its opposition to Leggett's motion for summary judgment, Accent also filed a motion to continue summary judgment in order to conduct additional discovery pursuant to Fed. R. Civ. P. 56(f), now Fed. R. Civ. P. 56(d).

On June 14, 2011, the district court held a hearing on the parties' motions for summary judgment. With respect to the asserted claims 1-5 of the '877 patent, Leggett argued that its Pinnacle device does not meet the following limitation:

said operator assembly including a pivotal shaft assembly and elongated operator bodies, with each of the operator bodies being operably coupled

with a respective one of said gripper, knotter, cutting element and cover so as to supply driving power from the single drive assembly thereto.

Specifically, Leggett argued that the language "each of the operator bodies being operably coupled with a respective one of said gripper, knotter, cutting element and cover" requires four elongated operator bodies—each operably coupled to one and only one of said gripper, knotter, cutting element, or cover. Because Leggett's Pinnacle device has only two elongated operator bodies, Leggett asserted that it cannot infringe these claims. Accent, however, argued that these claims are not limited to a specific number of elongated operator bodies because they allow for a single elongated operator body to perform multiple functions.

With respect to claim 5 of the '877 patent and claims 1, 3, 4, 7, and 10-14 of the '992 patent, Leggett argued that its Pinnacle device does not include a cover mount that permits the cover to pivot "through an arc of at least about ninety degrees." Accent, however, argued that the Pinnacle's cover mount does in fact allow its cover to pivot through an arc of ninety degrees and that only an easily removable mechanical stop prevents the cover mount from so rotating.

The district court did not grant Accent's request for additional discovery and instead granted Leggett summary judgment of noninfringement of all the asserted claims. *Accent Packaging, Inc. v. Leggett & Platt, Inc.*, No. H-10-1362, slip op. at 3 (S.D. Tex. Jun. 30, 2011). Regarding the '877 patent, the district court concluded that "[t]he word each, in this patent, refers to one of *four* arms" and that "[a]n ordinary reading of the language, therefore, assigns the machine's four arms a single function." *Id.* at 2. The district court determined that because the claims require four arms, Leggett's Pinnacle device does not infringe. With respect to the '992 patent, the district court concluded that the Pinnacle's "mount does

not pivot greater than 90 degrees" and therefore does not infringe. *Id.* at 3. According to the district court, the removability of the stop is of no consequence. In particular, the district court reasoned that "[t]he removable stop is simply a stop; the function of an arc in [Leggett's] machine is served by flipping less than 90 degrees."

Accent appealed, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## II. DISCUSSION

We review the district court's grant of summary judgment of noninfringement and its underlying claim construction de novo. *Laryngeal Mask Co. v. Ambu A/S*, 618 F.3d 1367, 1370 (Fed. Cir. 2010). Summary judgment is appropriate if, in viewing the evidence in a light most favorable to the non-moving party, the court finds that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

We apply the law of the regional circuit in deciding whether a Rule 56(d) motion was properly decided. The Fifth Circuit reviews the district court's dispositions of Rule 56(d) motions for an abuse of discretion. *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010).

We also apply the law of the regional circuit in reviewing Rule 12(b)(6) dismissals for failure to state a claim upon which relief can be granted. *Juniper Networks, Inc. v. Shipley*, 643 F.3d 1346, 1350 (Fed. Cir. 2011). The Fifth Circuit reviews dismissals for failure to state a claim de novo. *Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011).

### A. INFRINGEMENT

#### 1. "A RESPECTIVE ONE"

On appeal, Accent argues that the district court erred in construing "each" and "a respective one" to require four

elongated operator bodies. According to Accent, the claims are not limited to a device with four elongated operator bodies. While the claims require that "each of the operator bodies" are "operably coupled with a respective one of said gripper, knotter, cutting element and cover," Accent asserts that the claims do not require that each elongated operator body be coupled to one and only one of these operator elements. Accent points to the preferred embodiment disclosed in the specification, which explicitly shows two elongated operator bodies that are operably coupled to both the knotter and the cover. '877 patent col.8 l.61–col.9 l.5, col.9 ll.27–34.

Leggett responds that the district court correctly determined that because the asserted claims of the '877 patent recite four separate and distinct operator elements, the claims require at least four elongated operator bodies so that "each" of the elongated operator bodies is coupled to "a respective one" of the four claimed operator elements. Leggett notes that while the specification and prosecution history of the '877 patent impart no special meaning to the phrases "each" and "a respective one," the preferred, and only, embodiment in the specification has a "total of four operating arms." '877 patent col.6 l.16-17.

Claim terms are generally given their ordinary meaning as understood by persons skilled in the art in question at the time of the invention. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc). "The claims, of course, do not stand alone." *Id.* at 1315. "[T]he specification 'is always highly relevant to the claim construction analysis. Usually it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)).

Having considered all of the parties' arguments, we agree with Accent that the district court erred in construing the asserted claims of the '877 patent. Leggett can only arrive at its added limitation requiring four elongat-

ed operator bodies by construing "each" and "a respective one" to require that each of the elongated operator bodies correspond to one and only one of the gripper, knotter, cutter, and cover. But in the preferred embodiment of the invention, two elongated operator bodies are operably coupled to both the knotter and the cover. Put differently, the preferred embodiment features an elongated operator body that is operably coupled to *one or more* operator elements. We have held that "a claim interpretation that excludes a preferred embodiment from the scope of the claim is rarely, if ever, correct." *On-Line Techs., Inc. v. Bodenseewerk Perkin-Elmer GmbH*, 386 F.3d 1133, 1138 (Fed. Cir. 2004).

Nor are we persuaded that the asserted claim language explicitly requires that each elongated operator body be coupled to one and only one operator element. Nothing in the claim language compels that result. It is true that "each" operator body must be coupled to "a respective one" of the gripper, knotter, cutter, and cover. But that does not necessarily prevent an elongated operator body from being coupled to a second or even a third operator element as well. *See Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1342 (Fed. Cir. 2008) (holding that "an indefinite article 'a' or 'an' in patent parlance carries the meaning of 'one or more' in open-ended claims containing the transitional phrase comprising" unless a patentee has "'evidence[d] a clear intent' to limit 'a' or 'an' to 'one'" (quoting *KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1356 (Fed. Cir. 2000)). At first glance, the term "one" appearing directly after the phrase "a respective" might be viewed as limiting. In this case, however, the specification substantiates a construction that allows for an elongated operator body to be operably coupled to one or more operator elements. Again, the only embodiment described in Accent's patents features two elongated operator bodies that are each operably coupled to two distinct operator elements—the

knotter and the cover. And while the specification dis-closes a knotting device with four elongated operator bodies, the asserted claim language is not so limited. *See Phillips*, 415 F.3d at 1323 ("[A]lthough the specification often describes very specific embodiments of the inven-tion, we have repeatedly warned against confining the claims to those embodiments.").

With respect to claims 1-4 of the '877 patent, Leggett argues only that the Pinnacle does not meet the "each of the operator bodies being operably coupled with a respec-tive one" limitation. But Leggett does not contest Accent's assertion that, without a limitation requiring at least four elongated operator bodies, the Pinnacle device infringes claims 1-4 of the '877 patent. Consequently, there are no remaining disputes of material fact with respect to these particular claims. Because the district court erred in its claim construction, we reverse the district court's grant of summary judgment to Leggett with respect to claims 1-4 of the '877 patent and remand to the district court to enter summary judgment in favor of Accent on those claims.

### 2. "Of At Least About Ninety Degrees"

The asserted claims of the '992 patent claim "a mount for [the] cover permitting the cover to be pivoted away from said knotter to a knotter access position remote from said wire-maintaining position and through a pivot arc of at least about 90°." Claim 5 of the '877 patent also re-quires a mount that permits pivoting "through an arc of least about 90°." '877 patent col.12 ll.15-19. According to Accent, it is the Pinnacle's SafeLatch™ stop, not its cover mount, that prevents the cover from pivoting through the ninety-degree arc required by these claims. Accent con-tends that but for the Pinnacle's SafeLatch™ stop, the Pinnacle's mount would permit its cover to pivot through the required ninety-degree arc.

That is a distinction without a difference. The SafeLatch™ is in fact part of the Pinnacle device. Moreover, accepting Accent's argument would render the ninety-degree limitation meaningless. As the district court observed, "[s]tops are everywhere; without them all mounts would pivot 360 degrees." *Accent Packaging*, No. H-10-1362 at 3. Put differently, the SafeLatch™ stop cannot be ignored when determining whether the Pinnacle's mount *actually permits* its cover to be pivoted through a ninety-degree arc. Here, it is undisputed that the Pinnacle's mount, by virtue of its interaction with the SafeLatch™ stop, does not and cannot permit the cover to be pivoted through the requisite ninety-degree arc.

Accent also argues that Leggett infringes the '992 patent simply because the Pinnacle's SafeLatch™ stop can be easily removed by the user. We disagree. "[A] device does not infringe simply because it is possible to alter it in a way that would satisfy all the limitations of a patent claim." *High Tech Med. Instrumentation v. New Image Indus., Inc.*, 49 F.3d 1551, 1555 (Fed. Cir. 1995). To be sure, "if a device is designed to be altered or assembled before operation, the manufacturer may be held liable for infringement if the device, as altered or assembled, infringes a valid patent." *Id.* at 1556. Accent contends that Leggett's own patent application and promotional materials indicate that Leggett intends for the SafeLatch™ to be removed before operation. These materials, however, simply reflect the unremarkable fact that the stop is attached to the Pinnacle's frame with screws. Screws are a widely used fastener, but their use does not, by itself, evidence an instruction or intention that the Pinnacle be altered or dissembled in any way prior to operation. Rather, the Pinnacle manual and marketing materials consistently illustrate a cover that, because of the SafeLatch™ stop, does not and need not pivot through an arc of more than approximately sixty-eight degrees. Indeed, the SafeLatch™ serves the critical safety and

service function of maintaining the cover in its open and locked position during service or removal of the CORE™ module.

"The fact that it is possible" to alter the Pinnacle so that the cover can be pivoted through a ninety degree arc "is not enough, by itself, to justify a finding that the manufacture and sale" of the Pinnacle device infringe Accent's patent rights. *Id.* Accordingly, we affirm the district court's grant of summary judgment of noninfringement in favor of Leggett with respect to claim 5 of the '877 patent and all of the asserted claims of the '992 patent.

## B. ADDITIONAL DISCOVERY

At summary judgment, Accent filed a Rule 56(d) motion, asserting that additional discovery would create a genuine issue of material fact regarding Leggett's noninfringement theory with respect to claim 5 of the '877 patent and all of the asserted claims of the '992 patent. Specifically, Accent argued that additional discovery would allow it to discover "the details regarding the Pinnacle device provided to Leggett's customer, and whether Leggett intended or anticipated that the device would be operated without the 'stop' that Leggett relies on for its non-infringement argument, how easy it is to remove the 'stop,' if and when the 'stop' is removed in operation, and the purposes served by removing the 'stop.'" J.A. 1072. The district court, however, denied Accent's motion and instead granted summary judgment in favor of Leggett. On appeal, Accent contends that the district court abused its discretion in denying it "discovery related to [1] the devices actually sold to customers and [2] the manner in which those devices were used." Appellant's Br. 51.

We disagree with Accent's contention. In *Raby*, the Fifth Circuit clearly articulated its standard for reviewing district court dispositions of Rule 56(d) motions:

Rule 56([d]) discovery motions are "broadly favored and should be liberally granted" because the rule is designed to "safeguard non-moving parties from summary judgment motions that they cannot adequately oppose." *Culwell v. City of Fort Worth*, 468 F.3d 868, 871 (5th Cir.2006). The nonmovant, however, "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts." *SEC v. Spence & Green Chem. Co.*, 612 F.2d 896, 901 (5th Cir.1980). Rather, a request to stay summary judgment under Rule 56([d]) must "set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." *C.B. Trucking, Inc. v. Waste Management Inc.*, 137 F.3d 41, 44 (1st Cir.1998) (internal quotation marks and citations omitted). "If it appears that further discovery will not provide evidence creating a genuine issue of material fact, the district court may grant summary judgment." *Access Telecom, Inc. v. MCI Telecomm. Corp.*, 197 F.3d 694, 720 (5th Cir.1999).

*Raby*, 600 F.3d at 561.

The problem for Accent is that it never "set forth a plausible basis for believing that specified facts . . . probably exist." *Id.* Before summary judgment, Accent had access to extensive information regarding the Pinnacle device, including marketing materials, technical drawings, a patent application, an operating manual, and a video demonstrating the device's operation. Notably, Accent's counsel and its expert thoroughly inspected and photographed the allegedly-infringing Pinnacle device during a multiple-hour inspection at Leggett's facility. Yet even with this evidence, Accent failed to set forth a

plausible basis for believing that additional discovery would reveal that Leggett's customers have altered a Pinnacle device to infringe, or that there are differences between the Pinnacle device inspected and the device sold to customers. To the contrary, the evidence already produced indicated that customers would have no rational reason to remove the SafeLatch™ stop, which is designed to maintain the cover in its open and locked position during service or removal of the CORE™ and thereby prevent injury. Accent's arguments to the contrary are unpersuasive—that the SafeLatch™ stop is attached with screws is not enough, by itself, to create a plausible basis for believing that a customer would in fact remove the stop.

Accent similarly failed to explain "how the emergent facts, if adduced," would have influenced the outcome of summary judgment. Even if a customer were to modify a Pinnacle device by removing its SafeLatch™ stop, that modification alone would not make Leggett liable for infringement. In our view, Accent never articulated a plausible basis for believing that additional discovery would reveal that Leggett intended or anticipated that its customers would modify the Pinnacle.

Suffice it to say, district courts have wide discretion in managing discovery matters. *See, e.g.*, *Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 606 (5th Cir. 2001). Indeed, the Fifth Circuit "has long recognized that a plaintiff's entitlement to discovery prior to a ruling on a motion for summary judgment is not unlimited, and may be cut off when the record shows that the requested discovery is not likely to produce the facts needed by the plaintiff to withstand a motion for summary judgment." *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir. 1990) (citing *Paul Kadair, Inc. v. Sony Corp. of Am.*, 694 F.2d 1017, 1029-30 (5th Cir. 1983)). For these reasons, we conclude that the district court did not abuse its

discretion in denying Accent's requests for additional discovery at summary judgment.

## C. TRADE SECRET MISAPPROPRIATION CLAIM

Accent also challenges the district court's dismissal of its trade secret misappropriation claim under MUTSA. As an initial matter, Accent contends that the district court prematurely dismissed its MUTSA claim before allowing it to file a written response to Leggett's motion to dismiss. According to Accent, the specifications and tolerances of its 470 device are trade secrets. Accent asserts that Leggett misappropriated those trade secrets by "surreptitiously" obtaining and copying a 470 device.

Accent's assertions, however, are belied by its own complaint, which acknowledges that Accent's 470 device was sold in the regular stream of commerce. J.A. 22. Pursuant to MUTSA, a trade secret must be the "subject of efforts that are reasonable under the circumstances to maintain its secrecy." Mo. Rev. Stat. § 417.453(4)(b). But other than a rote citation of this standard, Accent's complaint does not allege any actual efforts to keep the specifications and tolerances of its 470 device a secret. Instead, Accent's complaint alleges that Leggett "obtained its knowledge of the specifications and tolerances of ACCENT's 470 Wire Tier System" from a 470 device being delivered to an Accent customer. J.A. 24-25. Information that can be obtained from examining products sold into the public domain, however, cannot constitute a trade secret. *See, e.g.*, *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 155 (1989) (noting that the public is "free to discover and exploit . . . trade secret[s] through reverse engineering of products in the public domain").

It is true that the district court dismissed Accent's MUTSA claim before Accent filed a written response to Leggett's motion to dismiss. Accent did, however, have an opportunity to respond orally at the parties' initial confer-

ence on June 15, 2010. There, Accent's counsel confirmed that Accent had sold and placed into the stream of commerce numerous 470 devices. J.A. 1437. Even more damaging to its claim, Accent's counsel confirmed that none of those sales was subject to non-disclosure or confidentiality restrictions. J.A. 1437-38.

We also note that Accent's complaint alleges that its 470 device is covered by the asserted '877 and '992 patents. As a matter of law, any specifications and tolerances disclosed in or ascertainable from the asserted patents became publicly available in October 2005 when the '877 patent application was published and, as such, could not constitute a trade secret in early 2006 when Leggett is alleged to have engaged in misappropriation. *See Bonito Boats*, 489 U.S. at 149; *On-Line Tech., Inc. v. Bodenseewerk Perkin-Elmer GMBH*, 386 F.3d 1133, 1141 (Fed. Cir. 2004) ("After a patent has issued, the information contained within it is ordinarily regarded as public and not subject to protection as a trade secret.").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Given Accent's admissions, both in its complaint and before the district court, we conclude that its complaint fails to state a claim to relief that is plausible on its face. Accordingly, we affirm the district court's dismissal of Accent's MUTSA claim.

## III. CONCLUSION

Because the district court erred in its construction, we reverse the district court's grant of summary judgment to Leggett with respect to claims 1-4 of the '877 patent and remand to the district court to enter summary judgment in favor of Accent on those claims. We affirm, however, the district court's grant of summary judgment

to Leggett with respect to claim 5 of the '877 patent and all of the asserted claims of the '992 patent. We also affirm the district court's denial of Accent's motion for additional discovery pursuant to Fed. R. Civ. P. 56(d), as well as its dismissal of Accent's MUTSA cause of action.

COST

Each party shall bear its own cost.

**REVERSED-IN-PART, AFFIRMED-IN-PART, AND REMANDED**
