NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**TRANSPERFECT GLOBAL, INC.,**
*Appellant*

**v.**

**JOSEPH MATAL, PERFORMING THE FUNCTIONS AND DUTIES OF THE UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND DIRECTOR, U.S. PATENT AND TRADEMARK OFFICE,**
*Intervenor*

---

2016-1121

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. CBM2014-00060.

---

Decided: July 12, 2017

---

DOUGLAS ETHAN LUMISH, Latham & Watkins LLP, Menlo Park, CA, argued for appellant. Also represented by JEFFREY G. HOMRIG, GABRIEL GROSS; JOSEPH HYUK LEE, Costa Mesa, CA; GABRIEL BELL, JONATHAN M. STRANG, Washington, DC; MICHELLE KINGHAM

HOLOUBEK, Sterne Kessler Goldstein & Fox, PLLC, Washington, DC.

PHILIP J. WARRICK, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, argued for intervenor. Also represented by THOMAS W. KRAUSE, SCOTT WEIDENFELLER, JEREMIAH HELM.

─────────────

Before REYNA, WALLACH, and CHEN, *Circuit Judges.*

CHEN, *Circuit Judge.*

This case arises from MotionPoint's petition for covered business method (CBM) review of claims 1–28 of U.S. Patent No. 6,857,022 ('022 patent), which is directed to ordering a translation of an electronic document that includes hyperlinks, and is owned by TransPerfect Global, Inc. (TransPerfect). The U.S. Patent & Trademark Office (PTO), Patent Trial & Appeal Board (Board) instituted the review and issued a final decision finding the challenged claims unpatentable for lack of written description support under 35 U.S.C. § 112 ¶ 1.[1] TransPerfect and MotionPoint subsequently settled, and the Director of the PTO intervened in this appeal pursuant to 35 U.S.C. § 143.

TransPerfect appeals the Board's construction of the claim term, "said hyperlink," arguing that the Board's construction excludes a translated hyperlink on a translated webpage that links to a different target than the

─────────────

[1]    Because the '022 patent was filed before the effective date of revisions to 35 U.S.C. § 112 made by The Leahy-Smith America Invents Act, Pub. L. No. 112-29, §§ 4(c) & 4(e), 125 Stat. 284, 296–97 (2011), the prior version of § 112 controls, *see MobileMedia Ideas LLC v. Apple Inc.*, 780 F.3d 1159, 1168 n.3 (Fed. Cir. 2015).

target to which the original, untranslated hyperlink links. TransPerfect also appeals the Board's lack of written description finding, arguing that even if the claimed "said hyperlink" must refer to the same hyperlink that is present in the original, untranslated webpage, the '022 specification describes an embodiment that can redirect a user to a translated version of the hyperlink's target instead of the original untranslated target, upon clicking the original, untranslated hyperlink. Because the Board's construction of "said hyperlink" is correct and all the challenged claims are unpatentable for lack of written description support, we affirm.

BACKGROUND

The '022 patent describes a method of ordering a translation of an electronic document on the Internet, such as a webpage, using a "one-click" translation component. '022 patent abstract. Figure 1 of the '022 patent contains a flowchart illustrating this process:



FIG 1

'022 patent fig.1. Figure 1 shows a user 1 who requests a webpage 2 from web server 3. *Id.* col. 3 ll. 3–6. The user can request a translation from one language (e.g., English) to another (e.g., German) by clicking on the one-click translation component. *Id.* col. 3 ll. 47–57. When the translation is requested, webpage 2 is transferred from user 1 to a "translation manager" 4. *Id.* col. 3 ll. 14–17. The translation manager translates the original webpage 2 into the requested language as translated webpage 7, which is then displayed to the user. *Id.* col. 3 ll. 28–36. The translation manager can also retrieve the original webpage 2 from web server 3 if the user provides the translation manager with just the address of the webpage rather than the webpage itself. *Id.* col. 3 ll. 28–31.

If webpage 2 contains hyperlinks to further webpages, translation manager 4 may replace links in the translated webpage 7 with hyperlinks pointing to the translation manager. *Id.* col. 3 ll. 36–38. The translation manager may automatically translate these hyperlinked webpages, either at the time the user clicks on the replacement links or in advance, such that the user need not request separate translations of hyperlinked webpages. *Id.* col. 3 ll. 38–46. This allows a user to surf many linked webpages without needing to request separate translations. *Id.*

Claim 1 is representative and reproduced below:

1. A method of ordering a translation of an electronic communication, the electronic communication comprising at least text of more than one word and *one or more hyperlinks* to *further electronic communications*, including the steps of:

    displaying simultaneously to a user:

        at least part of said electronic communication; and

        a single action translation component, said single action translation component

comprising an object identified as effecting a translation of said electronic communication in a single action;

*said user clicking said single action translation component* to request translation of at least said text of said electronic communication by transmitting said electronic communication, or an indicator of said electronic communication, to a *translation manager*; and

*said translation manager*:

> *obtaining a translation of said electronic communication*;

> directing transmission of said translation of said electronic communication to said user; and

> *providing translation of said further electronic communications when said hyperlink is activated*:

>> by delivering a translation of said further electronic communications that was translated when said electronic communication was translated; or

>> *by obtaining a translation of said further electronic communications when said hyperlink is activated.*

'022 patent col. 8 l. 51–col. 9 l. 11 (emphases added).

The Board found that "the first use of the term 'hyperlink' specifically identifies the hypertext document that includes the 'link or connection' and the objects linked or connected thereto." J.A. 13. The hypertext document that contains the link is the "electronic communication" and the objects linked or connected thereto are the "further electronic communications." J.A. 13. The Board

construed "hyperlink" to mean "a connection between an element in a hypertext document, such as a word, phrase, symbol, or image, and a different element in the document, another hypertext document, a file, or a script." J.A. 11. It construed "said hyperlink" to mean "referring back to the 'one or more hyperlinks,' i.e., the original 'one or more hyperlinks' in the original (untranslated) electronic communication that link or connect to the further (untranslated) electronic communications." J.A. 11, 21.

We have jurisdiction under 28 U.S.C. § 1295(a)(4).

## DISCUSSION

### I. Standard of Review

In construing claims, the Board applies the broadest reasonable interpretation consistent with the specification. *Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2142–45 (2016). "We review intrinsic evidence and the ultimate construction of the claim de novo." *SightSound Techs., LLC v. Apple Inc.*, 809 F.3d 1307, 1316 (Fed. Cir. 2015). "We review underlying factual determinations concerning extrinsic evidence for substantial evidence." *Id.* "Whether a patent claim is supported by an adequate written description is a question of fact." *AbbVie Deutschland GmbH & Co., KG v. Janssen Biotech, Inc.*, 759 F.3d 1285, 1297 (Fed. Cir. 2014). "We review the Board's conclusions of law de novo and its findings of fact for substantial evidence." *Blue Calypso, LLC v. Groupon, Inc.*, 815 F.3d 1331, 1337 (Fed. Cir. 2016). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

### II. Claim Construction

We begin with claim construction. The parties do not dispute the meaning of "hyperlink," but they do dispute the meaning of "said hyperlink." Appellant Br. 19. TransPerfect argues that a hyperlink contains a "label"

(the visible text) and a "Uniform Resource Locator" (URL) (the address of the target). TransPerfect contends that the "one or more hyperlinks" can still be the *same* hyperlink ("said hyperlink"), even after (1) the label is translated to a different language, and/or (2) the target is changed to point to a different URL—the URL of a translated version of the original target. TransPerfect maintains that the claims contemplate a hyperlink that displays with a translated label and points to a translated target, and that this hyperlink can still be regarded as the same "said hyperlink," because the purpose of the invention is to translate—not preserve—content.

The Director responds that the Board correctly found a fundamental mismatch between the '022 patent's claim language and specification because the claims, with their usage of "said hyperlink," recite "preserving hyperlinks," whereas the specification "describes replacing hyperlinks." J.A. 20. The Board framed this issue as "whether replacement or modification of the 'one or more hyperlinks' may occur and yet still constitute the same 'one or more hyperlinks.'" J.A. 12. We agree with the Board that the "said hyperlink" claim language refers back to the claimed one or more original untranslated hyperlinks in the original document, after considering the claim language, specification, prosecution history, and extrinsic evidence.

## A.

We first address the claim language. The parties agree with the Board that a "hyperlink" is the "connection between an element in a hypertext document [the label]. . . and a different element [the target]." J.A. 11. They also agree that the "said hyperlink" limitation must refer to the same hyperlink contained in the original untranslated webpage, but TransPerfect contends that a hyperlink can be translated (by modifying or replacing its label or URL) and still be the "same" hyperlink. We agree

that the use of the term "said" in the claims indicates that the "said hyperlink" limitation refers to the previously claimed "one or more hyperlinks to further electronic communications" limitation. *See Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1291 (Fed. Cir. 2015); *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1343 (Fed. Cir. 2008) (noting that the claim term "said" is an "anaphoric phrase[], referring to the initial antecedent phrase").

The Board explained that a hyperlink requires only a specific connection between the label (the element that is visible to the user) and the target (the further electronic communications, to which the user will be directed after clicking on the label). The Board found that the perspective of a user is immaterial because the hyperlink is defined electronically as the connection between the label (e.g., element A) and the target (e.g., element B). J.A. 13. If the connection between the label and target is changed such that it connects to a translated version of the target (e.g., element C), which necessarily exists at a different location from that of element B, the hyperlink no longer connects elements A and B, but it connects elements A and C. J.A. 13. This new hyperlink connection between elements A and C is different because it connects different elements from that of the original hyperlink. J.A. 13.

TransPerfect argues that the "said hyperlink" limitation must "refer[] to a link in the translated webpage that necessarily would be altered as a result of the translation." Appellant Br. 13. The Director responds that the "said hyperlink" limitation, at a minimum, is broader and "include[s] . . . embodiments in which the translated document includes the original, unaltered hyperlinks from the untranslated document." Intervenor Br. 49. TransPerfect disagrees, arguing that the claims require

that "the hyperlinks are necessarily translated along with the rest of the document."[2]  Reply Br. 17.

We agree with the Director that the claims do not require a translation of the "further electronic communications," along with the translation of the original "electronic communication."  The claims recite that the translation manager "*provid[es] translation of said further electronic communications when said hyperlink is activated . . . by obtaining a translation of said further electronic communications when said hyperlink is activated.*"  '022 patent col. 9 ll. 4–11 (emphasis added).  The translation manager can thus *obtain* a translation of the target of said hyperlink (the further electronic communication) *when said hyperlink is activated.*  By contrast, the rest of the webpage (the electronic communication) is translated when the user clicks on the "single action translation component"; when the user clicks on this component, the translation manager "obtain[s] a translation of said electronic communication" and "direct[s] transmission of said translation of said electronic communication to said user."  *Id.* col. 8 l. 51–col. 9 l. 11.

TransPerfect also argues that the Board erred because we have allowed claims to use the term "said" to refer to the same antecedent object, even after the antecedent object has been physically changed or altered.  TransPerfect cites *Creative Internet Advertising Corp. v.*

---

[2]　Although TransPerfect also argues waiver, we decline to find waiver because the Director did not change the scope of MotionPoint's claim construction position.  *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1359 (Fed. Cir. 2008) ("While a waiver may occur if a party raises a new issue on appeal . . . . [a] waiver will not necessarily occur . . . if a party simply presented new or additional arguments in support of 'the scope of its claim construction.") (internal quotation marks omitted).

*Yahoo!, Inc.*, 476 F. App'x 724 (Fed. Cir. 2011), arguing that we construed the claimed "said end user communication message" limitation to refer to the "same" message, even though parts of that message had been altered or replaced. Reply Br. 7. TransPerfect also cites *Technology Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1322 (Fed. Cir. 2008), arguing that the claims expressly recited a signal and referred back to the signal as "said" signal, even after the signal was "changed." Reply Br. 8.

The Director responds that the claims in those cases are different from TransPerfect's case because the claim language expressly recited modifying the antecedent object, whereas in TransPerfect's case, the claims do not recite modifying the antecedent object. Intervenor Br. 39–40. For example, in *Creative Internet Advertising Corp.*, the claims recite "logic configured to receive an end user communication message," "to insert a background reference . . . into said end user communication message," and "to transmit said end user communication message with the background reference." 476 F. App'x at 725–26; *see also* Intervenor Br. 39–40. The Director makes the same argument for *Technology Licensing Corp.* in that the claims "expressly recited the modification." Intervenor Br. 40. The claims recited "selectively adding a current to said level shifted signal wherein the amount and/or polarity of said current is responsive to said compared signal and the D.C. level of said level shifted signal is changed in response to said current." *Tech. Licensing Corp.*, 545 F.3d at 1322.

We agree with the Director. Unlike in *Creative Internet Advertising Corp.* and *Technology Licensing Corp.*, the claims here do not recite obtaining a translation of the target of "said hyperlink" (the further electronic communication) along with the translation of the original webpage (the electronic communication). Nor do they recite changing the target of "said hyperlink" from the original address to a second address that corresponds to a

translated version of the "further electronic communication." The claims instead expressly contemplate that the translation of "said further electronic communication" is obtained when "said hyperlink" is activated.[3] This separate translation would not be necessary if "said further electronic communication" was already translated along with the translation of the original webpage.

The Board properly rejected TransPerfect's argument that the hypertext markup language (HTML) code is the same for an original hyperlink and a translated one. J.A. 14–15. It correctly observed that the HTML code for a translated hyperlink is different because a translated hyperlink contains the URL address of a translated version of the target, which is different from the URL address of the original target. J.A. 14–16. It also rejected TransPerfect's position that a hyperlink can continue to be the same hyperlink when a user, upon clicking the link, sees the same content—just in a different language—when the user is taken to a translated version of the target. J.A. 14. It explained that "[w]hile the information contained therein may have the same meaning, what a user sees is clearly not the same." J.A. 14 n.1. In such a case, "the user would be able to tell that the second hyperlink was not the same as the first because the second hyperlink connected to an element different from the element connected to the first hyperlink." J.A. 14.

---

[3] TransPerfect also cites *Chef America, Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1372 (Fed. Cir. 2004), for the first time in its Reply Brief, but its argument is the same. Reply Br. 8. We similarly reject TransPerfect's position because although the claims refer to "said" dough and "said" batter, they also expressly recite modifying the dough and batter, unlike the claims at issue here. *Id.*

B.

TransPerfect turns next to the '022 specification to argue that the specification makes clear that the claimed "said hyperlink" must mean a hyperlink modified from the original hyperlink. The '022 specification discloses an embodiment in which the hyperlinks in a webpage are translated along with the rest of the webpage, and each hyperlink in the original webpage is replaced with a hyperlink containing a translated label and a new target pointing to a translated version of the original target. '022 patent col. 3 ll. 37–44. In this embodiment, the "links in the translated web page" are modified to "point to the translation manager," which provides translated versions of the hyperlinked webpages. *Id.* col. 3 ll. 37–44. TransPerfect argues that the Board's failure to find sufficient written description support for the claims should have alerted the Board to a claim construction error because the Board construed the claims to read out the preferred embodiment.

Nothing in the '022 specification, however, suggests that "said hyperlink" refers to a replacement hyperlink that points to the translation manager instead of to the original target, to which the earlier recited "hyperlink" points. To the contrary, the '022 specification indicates that the hyperlinks contained in the original webpage are replaced with different hyperlinks in the translated webpage. The specification explains that the translation manager "may also replace all links in the translated web page 7 with links that point to the translation manager 4." '022 patent col. 3 ll. 37–39. Replacing an original hyperlink with a new link pointing to the translation manager—rather than keeping the original link—strongly suggests that the identity of the hyperlink is changed. Changing the connection between the original label and original target such that the label points to the translation manager instead of the original target "replac[es]" the original hyperlink with a new one. J.A. 11; '022

patent col. 3 l. 37. The *replacement* hyperlink is different from the *original* hyperlink because the translation manager "requires a new link." J.A. 10–11. No such replacement would be necessary if the '022 specification viewed a hyperlink that points to the translation manager to be the *same* as the original hyperlink.

We agree with the Board that the '022 specification does not require the claimed "said hyperlink" limitation to mean replacement hyperlinks that point to the translation manager rather than the original hyperlinks that point to the original targets. It is true that claims typically cover embodiments disclosed in the specification, *see, e.g., Accent Packaging, Inc. v. Leggett & Platt, Inc.*, 707 F.3d 1318, 1326 (Fed. Cir. 2013), but here, nothing in the specification requires a re-understanding of the claim language to encompass the disclosed embodiment, *see, e.g., Lucent Techs., Inc. v. Gateway, Inc.*, 525 F.3d 1200, 1215–16 (Fed. Cir. 2008) (noting that "where we conclude that the claim language is unambiguous, we have construed the claims to exclude all disclosed embodiments").

## C.

Beyond the claim language and specification, TransPerfect's argument before the PTO in a separate reexamination proceeding for the '022 patent on the meaning of its claimed "said hyperlink" limitation is particularly damaging to TransPerfect's current position. *See Microsoft Corp.*, 789 F.3d 1292, 1298 (Fed. Cir. 2015) (explaining that the prosecution history of a patent which has returned to the PTO for a second review is relevant to the PTO's construction of the claims for that patent). In that reexamination, TransPerfect argued the exact opposite of the position it presents to us here, to overcome prior art that used modified hyperlinks pointing to translated versions of the targets of the original hyperlinks rather than maintaining the original hyperlinks pointing to the original targets. TransPerfect distinguished a prior

art reference (Lakritz) by arguing that the corresponding hyperlink in Lakritz points to a new webpage—the Spanish-language page—instead of the original-language page. Contrary to what TransPerfect advanced in the current proceeding, TransPerfect in the reexamination told the Examiner that its claimed "hyperlink" always points to the same target. The Board recognized this conflict and quoted the following prosecution history, which was TransPerfect's own statement in the reexamination:

> *In claim 1*, regardless of the usage of a relative or absolute hyperlink, *the target of a hyperlink in the original (e.g., English-language) document* ("hyperlinks to further electronic communications") *is the same as the target in a document* (e.g., Spanish-language document) translated from the source document ("said further electronic communications"; "said hyperlink[")]). *That is, in claim 1, the same "hyperlinks" point to the same "further electronic communications" in both the "translation of said electronic communication" and the initial "electronic communication."* In contrast, Lakritz's translated documents do not link to the same "further electronic communications" as the original document. (Nakhimovsky Decl., ¶ 71).

> This is understood by considering the alleged "hyperlinks to further electronic communications" in Lakritz. The hyperlink consisting of "<a href= "contact.html">" in an English-language page found at http://www.lai.com/joe/index.html in Lakritz actually refers to the document http://www.lai.com/joe/contact.html. *To follow the language of claim 1, the corresponding hyperlink in the corresponding Spanish-language page should also refer to http://www.lai.com/joe/contact.html.* But that is not the case in Lakritz. In Lakritz, the corresponding hyperlink in the corresponding Spanish-language page[,] http://

> www.lai.com/joe/spanish/index.html, instead refers to the document http://www.lai.com/joe/spanish/contact.html. Said another way, no translation of this alleged "further electronic communication" is needed, as it is already in Spanish.

J.A. 17 (quoting J.A. 1449) (italics added by the Board).

TransPerfect argued during the reexamination that, for its claims, "the target of the hyperlink in the original document *is the same* as the target in a document translated from the source document." J.A. 17 (emphasis in original). Contrary to its argument to us that the '022 specification requires "said hyperlink" to refer exclusively to replacement hyperlinks that point to the translation manager, TransPerfect argued during the reexamination that "said hyperlink" must "*point to the same [target],*" whether that link is in the original or translated document. J.A. 17. The Board correctly recognized that TransPerfect improperly attempted to advance a conception of the meaning of "said hyperlink" that was the opposite of what TransPerfect argued in the separate reexamination proceeding to overcome prior art. J.A. 18.

TransPerfect argues to us that the Board failed to consider the full context of the prosecution history because it ignored other statements in which TransPerfect explained that hyperlinks can be modified to point to the translation manager. The Director, however, correctly responds that TransPerfect's other statements occurred only in a background paragraph of TransPerfect's office action response, and they referred to the '022 specification rather than the actual claims. Intervenor Br. 35; J.A. 1429, 1548. When read in context, those other statements were immaterial to how TransPerfect portrayed the meaning of its claims.

TransPerfect also argues that Lakritz differs from the '022 patent because Lakritz uses separate documents for each language, organized in "parallel document trees."

Appellant Br. 30. Thus, in TransPerfect's view, this distinction makes its other statements about other distinctions between the claims and Lakritz beside the point. TransPerfect contends that in Lakritz and in other prior art, the user is confined to a pre-determined universe of documents, whereas the '022 patent enables dynamic web browsing and the translation of any arbitrary hyperlinked target. The possibility of these other distinctions between the challenged claims and the prior art, however, does not erase the conflict in TransPerfect's reexamination statements distinguishing the prior art based on the prior art's modification of the targets of hyperlinks.

We agree with the Board that TransPerfect during reexamination distinguished Lakritz for using modified hyperlinks that point to translated targets rather than pointing to the original targets. These reexamination statements to the PTO by TransPerfect support the Board's construction of "said hyperlink" to include unmodified hyperlinks pointing to the original targets. J.A. 11.

## D.

Lastly, TransPerfect relies on its expert testimony to argue that a person of ordinary skill in the art "would have understood that 'said hyperlink' is the same 'one or more hyperlinks,' where the 'one or more hyperlinks' and its label has been translated and its destination modified to point to a translation of the 'further electronic communications' by the translation manager." J.A. 1633–34 ¶ 33. The Board rejected this testimony because it was inconsistent with both the well-understood meaning of hyperlink and the prosecution history. J.A. 10, 16–19.

We agree that TransPerfect's expert testimony does not overcome the intrinsic evidence contained in the claim language, specification, and prosecution history. J.A. 10–19. Because the intrinsic evidence supports the Board's construction of "said hyperlink," we affirm the Board's construction. *Microsoft Corp.*, 789 F.3d at 1297 ("To the

extent the Board considered extrinsic evidence when construing the claims, we need not consider the Board's findings on that evidence because the intrinsic record is clear."). We agree that "said hyperlink" includes at least unmodified hyperlinks that point to "further (untranslated) electronic communications." J.A. 11, 21.

## III. No Written Description Support

We next address the Board's finding of unpatentability. The Board found that a person of ordinary skill in the art would not have understood from the written description of the '022 patent that the inventors possessed and described an embodiment in which "said hyperlink" referred to one or more untranslated further electronic communications. J.A. 30. The Board rejected TransPerfect's argument that a disclosed browser plug-in could perform, once an untranslated hyperlink is clicked, the tasks of (1) translating an untranslated hyperlink; and/or (2) redirecting a user to the translation manager to access a translated version of the "further electronic communications." The Board explained that claim 1 recites that the *translation manager* performs the step of "providing translation of said further electronic communications when said hyperlink is activated," and claim 1 does not refer to a browser plug-in. J.A. 28–29. It also found that there is no description of any plug-in that performs the functions of the translation manager, that a plug-in would still need to use the translation manager to perform the actual translation, and that a translation would still replace all the untranslated hyperlinks with new ones pointing to the translation manager.

The written description requirement provides that a patentee's application for a patent must "clearly allow persons of ordinary skill in the art to recognize that [he] invented what is claimed." *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc) (quoting *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563

(Fed. Cir. 1991)).  "[T]he test for sufficiency is whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date."  *Id.*  "[T]he level of detail required to satisfy the written description requirement varies depending on the nature and scope of the claims and on the complexity and predictability of the relevant technology."  *Id.*

Here, TransPerfect argues that the '022 specification "expressly (and broadly) states that a plug-in could perform the 'described functions' of the invention."  Appellant Br. 36–37 (quoting '022 patent col. 6 ll. 22–23).  This browser plug-in can "interact either actively or passively with the viewed web pages . . . and communicate with the translation manager via the Internet to request translation in response to a keystroke, mouse action, . . . or other method by the customer," including "request[ing] translation in response to a . . . mouse [click]" on a hyperlink. '022 patent col. 6 ll. 23–30.  An "explorer bar" can also "communicate with the web browser to gain access to the required details of the current web page" and "support[] the translation of web pages."  *Id.* col. 4 l. 64–col. 5 l. 3. According to TransPerfect, when a user activates an untranslated hyperlink, the plug-in would recognize that the user desires a translated version of "said hyperlink" and redirect the user's browser to the translation manager.

We agree with the Board that the '022 specification lacks sufficient written description support for the challenged claims.  The '022 specification provides no disclosure of how a browser plug-in would redirect a user to a translated version of an untranslated hyperlinked webpage, or to the translation manager, each time an untranslated hyperlink is activated.  J.A. 29.  The only disclosed mechanism for translating hyperlinked pages uses the translation manager to *replace* the hyperlinks in the original webpage with new hyperlinks in a translated

webpage that point to the translation manager. '022 patent col. 3 ll. 37–39. TransPerfect even concedes that the browser plug-in does not itself perform translations, but only acts as an intermediary. Appellant Br. 36–37.

TransPerfect contends that the claims do not preclude a plug-in from acting as an intermediary to coordinate between the browser and the translation manager to provide translated content because claim 1 is an open-ended claim. We reject this argument because, even if the claims do not foreclose the use of a plug-in, there is no disclosure of a plug-in with the alleged intermediation capability. The specification contains no disclosure of an intermediary role for plug-ins to intervene whenever a user activates an untranslated hyperlink.

Substantial evidence also supports the Board's finding that the "described functions" of the plug-ins refer to the one-click translation component. J.A. 29. The function of requesting a translation in response to a keystroke, mouse action, voice command, or other command from a user is for the translation of the original webpage (the electronic communication), not the targets of the hyperlinks within that webpage (the further electronic communications). '022 patent col. 6 ll. 20–30. The plug-in does not itself perform any translations, but it requests a translation of the original webpage from the translation manager. *Id.* col. 6 ll. 28–30. Even if the plug-in were an intermediary to the translation manager, the only disclosed mechanism of the translation manager for translating hyperlinked pages is the replacement of all the hyperlinks in the original webpage with replacement hyperlinks pointing to the translation manager. '022 patent col. 3 ll. 37–39. The '022 specification does not disclose using plug-ins to translate linked pages without using replacement hyperlinks. Because of this limited disclosure, TransPerfect attempts to bootstrap real-time translation into the disclosure of the plug-in. '022 patent col. 4 l. 61–col. 5 l. 3, col. 6 ll. 20–30. Yet the '022 specifi-

cation provides no description of how the plug-in would perform real-time translation of all hyperlinked webpages without replacing the original hyperlinks with new hyperlinks pointing to the translation manager.

It is true that the specification need not use the same words as used in the claims, *Blue Calypso*, 815 F.3d at 1345–47, but here, the Board correctly found that a person of ordinary skill in the art would not have understood that the inventors of the '022 patent possessed and described a plug-in that could perform a translation without using replacement hyperlinks. Therefore, we find that the Board properly rejected the challenged claims for lack of written description support.

## CONCLUSION

We have considered TransPerfect's remaining arguments and find them unpersuasive. We affirm the Board's construction of "said hyperlink," and we affirm the Board's rejection of the challenged claims for lack of written description support.

## COSTS

No costs.

## **AFFIRMED**